IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BAUER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON COUNTY, MISSOURI, *et al.*,<br><br>Defendants. | No. 4:09-CV-2116-TIA |

**PLAINTIFF'S MEMORANDUM**
**IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Anthony E. Rothert (#44827MO)
Grant R. Doty, (#60788MO)
American Civil Liberties Union
 of Eastern Missouri
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112

Robert L. King (E.D. Mo. #3560)
505 N. Seventh Street, Suite 3600
St. Louis, Missouri 63101
Phone: (314) 863-6902
Fax: (314) 863-7902

*Counsel for Plaintiff*

December 20, 2010

**INTRODUCTION**

Jefferson County issues over a thousand civil body attachments each year. Although a person accused of a crime who is arrested without a warrant must generally be taken before a judge or released within 48 hours of arrest as a matter of constitutional law,[1] Jefferson County and Sheriff Boyer routinely and unlawfully detain people pursuant to *civil* body attachments for as long as five weeks prior to taking them before a judge. In this case, Jefferson County detained Plaintiff Michael Bauer for more than one month — 37 days — without taking him before a judge. It is beyond any legitimate dispute that such prolonged detention without access to the courts constitutes a violation of due process. *See*, *e.g.*, *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004) (38-day pre-appearance detention violated due process); *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998) (57-day detention on civil body attachment without seeing a judge "shocked the conscience" and constituted a policy of "deliberate indifference").

In Count I of his First Amended Complaint, Plaintiff seeks relief against Jefferson County for its prolonged detention practices in civil matters involving body attachments. Count I is appropriate for class treatment pursuant to Federal Rule of Civil Procedure 23(b)(2). Rule 23(b)(2) provides for class certification of claims in which "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The Advisory Committee's Note to Proposed Amendments to Rule 23 expressly observes that subdivision (b)(2) is especially appropriate 'in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.'" *U.S. Fidelity & Guar. Co. v. Lord*, 585 F.2d 860, 875 (8th Cir. 1978) (quoting 39 F.R.D. 69, 102

---

[1]*See County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

(1966)). Indeed, *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), was just such a class action challenging the length of detention of persons arrested without warrants prior to their being taken before a judge for probable cause determinations.

Plaintiff seeks certification of the following class:

> All persons whom Jefferson County, Missouri and Defendant Sheriff Boyer have detained or will in the future detain pursuant to a body attachment or other civil process and who were not presented before a judge within 24 hours[2] of arrest.

## FACTUAL BACKGROUND

According to Jefferson County's own hand-picked witnesses in this case, it issues over one thousand civil body attachments every year, and it is not "unusual for someone who's been picked up on a body attachment to wait 35 days *or more* to see a judge." Ex. 1 (Transcript of 9/9/10 Jefferson County Rule 30(b)(6) Deposition of Donald Allen (hereinafter "Allen Tr.")) at 27 (more than 1,000 body attachments); Ex. 2 (Transcript of 9/9/10 Jefferson County Rule 30(b)(6) Deposition of Lieutenant Thomas Wright, Sr. (hereinafter "Wright Tr.") at 28 (35 days or more not unusual) (emphasis added). *See also* ECF Doc. 51-1 (Transcript of 9/9/10 Jefferson County Rule 30(b)(6) Deposition of Tamela Sides (hereinafter "Sides Tr.")) at 42 ("it's not unusual"). The Jefferson County circuit court issues a body attachment when someone fails to appear for a court proceeding. Sides Tr. at 17-19. The body attachment directs law enforcement to arrest the respondent and hold him for the court hearing. *Id*. at 22. The issuance of a body attachment is for the failure to appear and does not constitute a finding of contempt. *Id*. at 26.

There is no procedure in place in Jefferson County for ensuring that persons detained on body attachments see a judge promptly after their arrest. Sides Tr. at 40. Defendant Tamela Sides, an assistant prosecutor and the head of the Family Support Unit for 25 years, *id*. at 7-8,

---

[2] Or other appropriate period, as may be determined by the Court.

testified that she didn't know whether people in jail on a body attachment have a right to due process. *Id*. at 24-25. Instead, Jefferson County has a system like the "will call" system condemned in *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998). In child support cases, for instance, Sides schedules hearings for persons detained on body detachments in the order in which the detainees were arrested and for "whenever we can manage to get it in with the court." Sides Tr. at 41. *See also* Wright Tr. at 27 (when a person held on a body attachment sees a judge "is not up to us [the Sheriff's department and jail]"; "we don't make the decision, the courts call for them"). This "will call" system is the reasons it is not "unusual for someone who's been picked up on a body attachment to wait 35 days or more to see a judge." Wright Tr. at 28; Sides Tr. at 42. ("it's not unusual").

In child support cases, Jefferson County's Family Support Unit receives a referral from the Family Support Division of the Missouri Department of Social Services when someone is behind on support payments, at which point Sides files a motion for a show cause order. Sides Tr. at 16. The motion is reviewed *ex parte* by a judge who then issues a show cause order directing the respondent to show cause why he should not be held in contempt for failure to pay support. *Id*. at 17. The show cause order also establishes a date for a show cause hearing and sets bond in the amount of the child support arrearage. *Id*. at 17, 33. If the respondent fails to appear for the show cause hearing, the circuit court issues a body attachment. *Id*. at 18.

Defendant Sides receives a daily intake sheet that lists all of the people detained during the preceding 24-hour period, as well as all of the persons still in custody and the length of their detentions. Sides Tr. at 24. After Sides eventually schedules a hearing, she informs the bailiff when the respondent is to be brought from jail to court for the hearing. *Id*. at 41.

3

Michael Bauer's case provides a classic example of the constitutional deficiencies in Jefferson County's "will call" system. Bauer went to the St. Louis police department on February 18, 2009, to obtain a background check for a prospective job. First Amended Complaint (FAC) ¶ 2. The police arrested him pursuant to a 2007 civil body attachment that had been issued by the Circuit Court of Jefferson County. *Id*. The next day, the Jefferson County Sheriff's Department took custody of Plaintiff, and despite his protests, he remained in involuntary custody for a total of 37 days, until March 27, 2009, without ever seeing a judge. *Id*. The day Plaintiff was finally scheduled to see a judge, on March 27, 2009, he was released from custody, after Defendant Sides realized that the circuit court had withdrawn the body attachment nearly two years earlier on May 17, 2007. *Id*.; Sides Tr. at 34-39.

At the time of his arrest, Sides knew, or should have known, that the body attachment for Mr. Bauer had been withdrawn in 2007, because she is the person who requested the court to withdraw it. Sides Tr. at 36. Despite the fact that Sides learned of Plaintiff's 2009 arrest "[s]hortly after he was picked up" and no more than 24 hours after he arrived at the Jefferson County jail (*id*. at 24, 35), she did not schedule Plaintiff to see a judge sooner than the 37th day of his confinement at the Jefferson County jail. *Id*. at 35.

Plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983 and state law. He brought Count I against Jefferson County and Defendant Boyer in his official capacity for declaratory and injunctive relief. Plaintiff seeks certification of Count I as a class action on behalf of all persons similarly situated who have been held or may in the future be held by those two defendants pursuant to body attachments for unconstitutionally prolonged periods without seeing a judge in violation of the due process clause of the Fourteenth Amendment.

**ARGUMENT**

For a claim to be certified as a class action, the four prerequistes of Rule 23(a) must be satisfied, in addition to the requirements of one of the three sections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Rule 23(a)'s four requirements are:

> (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Id*. at 613. "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Id*. at 614. "Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule 'must be read liberally in the context of civil rights suits.'" *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (quoting *Ahrens v. Thomas*, 570 F.2d 286, 288 (8th Cir. 1978)). "This principle of construction limits the district court's discretion." *Id*. Thus, "[c]ourts should guard against the temptation to assume that the certification of a [Rule] 23(b)(2) class action is purely discretionary." *Id*. (quoting 3B J. MOORE & J. KENNEDY, *Moore's Federal Practice* ¶ 23.40(3) (1980)).

**I.   The four requirements of Rule 23(a) are satisfied.**

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Doyel v. McDonald's Corp.*, 2010 WL 3199685, at *1 (E.D. Mo. Aug. 12, 2010) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974)). In this case, the requirements of Rule 23(a) are met.

5

### A. Numerosity: the proposed class of past, present and future Jefferson County civil detainees is numerous and joinder of all members is impracticable.

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Rule 23(a)(1) sets a "low threshold for numerosity." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). First, "[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). In addition, "[i]n order to meet [the numerosity] requirement it is not necessary to specify an exact number or to prove the identity of each class member, rather 'the plaintiffs must only show a reasonable estimate of the number of class members." *Halbach v. Great-West Life & Annuity Ins. Co.*, 2007 WL 1018658, at *3 (E.D. Mo. April 2, 2007) (quoting *Morgan v. United Parcel Serv. of Am.,* 169 F.R.D. 349, 355 (E.D.Mo. 1996)). This is particularly true, as here, "where the defendants alone have access to such data." *Shariff v. Goord*, 235 F.R.D. 563, 570 (W.D.N.Y. 2006).

Moreover, courts are "permitted to make common sense assumptions in order to find support for numerosity." *Phipps v. Sheriff of Cook Cnty.*, 249 F.R.D. 298, 300 (N.D. Ill. 2008) (citing *Block v. Abbott Labs.,* 2002 WL 485364, at *3 (N.D. Ill. Mar.29, 2002)). "[A]t least one court has recognized that where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983) (citing *Foster v. Bechtel Power Corp.,* 89 F.R.D. 624 (E.D. Ark. 1981) and *Tolbert v. Western Elec. Co.*, 56 F.R.D. 108, 113 (N.D. Ga. 1972) ("the wise practice is to allow such cases to proceed, at least at the onset, as class actions")).

"Certainly, when the class is very large, for example, numbering in the hundreds, joinder will be impracticable; but in most cases, the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower." 1 H. NEWBERG & A. CONTE, *Newberg on Class Actions*

§ 3:5 (4th ed. 2002). And while "[n]o arbitrary rules on the size of classes have been established by the courts," *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977), "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (citing 5 *Moore's Federal Practice*, *supra*, § 23.22[3][a] (3d ed. 1999)). As this Court has noted, "[c]ourts have certified classes with fewer than 40 members." *Morgan v. United Parcel Service of America, Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996) (citing *Esler v. Northrop Corp.*, 86 F.R.D. 20 (W.D. Mo. 1979); *TBK Partners v. Chomeau*, 104 F.R.D. 127, 130 (E.D. Mo. 1985)). "[C]ourts have found this element satisfied when the putative class consists of as few as 10 to 40 members." *Block*, 2002 WL 485364, at *3. "In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." 1 H. NEWBERG & A. CONTE, *Newberg on Class Actions* § 3:5 (4th ed. 2002).

In the context of Rule 23(b)(2) civil rights cases, "courts have suggested that the numerosity requirement should not be employed in a mechanical manner to preclude the use of the class action device in precisely the kind of situation for which it is most appropriate." *Gurmankin v. Costanzo*, 626 F.2d 1132, 1135 (3d Cir. 1980).[3] *Accord Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983) ("the relevance of the numerosity requirement to class certification may in appropriate cases be less significant where in fact class wide discrimination has been al-

---

[3] Citing *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (liberal construction given to numerosity requirement in civil rights suit seeking, inter alia, injunctive relief on behalf of future class members); *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (per curiam) (presence of unknown future blacks apparently satisfied class requirements in discrimination action brought by former

leged"). "We believe that the numerosity requirement must be evaluated in the context of the particular setting, and agree that it may pose less of an obstacle when there has been classwide discrimination and the representative party seeks only prospective remedial relief than when the suit is for damages under Rule 23(b)(3)." *Gurmankin*, 626 F.2d at 1135.

"Even a small class of fewer than 10 actual members may be upheld if an indeterminate number of individuals are likely to become class members in the future or if the identity or location of many class members is unknown for good cause." 8 H. NEWBERG & A. CONTE, *Newberg on Class Actions* § 25.4 (4th ed. 2002). This is because numbers alone are not determinative of the numerosity requirement. "In addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559-60 (8th Cir. 1982). Thus, for instance, "numerosity is met where, as here, the class includes individuals who will become members in the future. As members *in futuro,* they are necessarily unidentifiable, and therefore joinder is clearly impracticable." *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo. 2002) (finding numerosity satisfied).

> The problem before the district court, and now before us, is not simply to say whether 33 class members are enough or too few to satisfy Rule 23(a)(1). Ample case law can be cited to show that smaller classes have been certified and larger ones denied certification for lack of numerosity. [citation omitted] Such number comparisons miss the point of the Rule. The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors. Here, neither party can even count how many black applicants there are, let alone identify all of them. Moreover, ***the alleged class includes future and deterred***

---

employee); *Afro-American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (class action particularly suited to protect future potential victims of discrimination)).

8

> ***applicants, necessarily unidentifiable***. In such a case the requirement of Rule 23(a)(1) is clearly met, for "joinder of unknown individuals is certainly impracticable."

*Phillips v. Joint Legislative Comm.,* 637 F.2d 1014, 1022 (5th Cir.1981) (emphasis added).[4]

Moreover, numerosity is more readily found in prisoner cases due to the "inherently fluid" nature of prison populations. In *Clarkson v. Coughlin*, 145 F.R.D. 339, 348 (S.D.N.Y. 1993), the court certified a class of "at least seven deaf or hearing-impaired female inmates." "Given that the problems faced by deaf women in DOCS custody is systemic, that the composition of the prison population is inherently 'fluid,' and that DOCS itself admits the difficulty it has of identifying and tracking female inmates who are deaf or hearing-impaired, the Court can infer that the proposed sub-class of female inmates does exist." *Id. See also Green v. Johnson*, 513 F. Supp. 965, 975 (D. Mass. 1981) ("evidence of numerosity, considered in light of the fact that the inmate population at these facilities is constantly revolving, establishes sufficient numerosity"). Courts thus routinely find the numerosity requirement satisfied in inmate cases.[5]

---

[4] *Accord Miller v. Carson,* 563 F.2d 741, 743 (5th Cir. 1977); *Jack v. American Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir.1974). *See also Twarog v. Allen*, 2007 WL 2228635, at *5 (M.D. Ala. July 31, 2007) (relying in part on future inmate class members); *Shariff v. Goord*, 235 F.R.D. 563, 570 (W.D.N.Y. 2006) (same); *Lawson v. Wainwright*, 108 F.R.D. 450, 454 (S.D. Fla. 1986) (same).

[5] *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) (in an arrestee's section 1983 action, numerosity met where 67 people had been arrested pursuant to the disputed policy and 41 had been discharged for failure to establish probable cause, a number that "will increase further if the policy continues in force"); *Niblack v. Hayman*, 2010 WL 1644893, at *1 (D.N.J. April 20, 2010) (inmates' section 1983 action satisfied the numerosity requirement where it was "conceivable that much more than forty (40) inmates … are affected by the alleged practices"); *Buzzarro v. Ocean County*, 2009 WL 1617887, at *11 (D.N.J. June 9, 2009) (1983 action conceded to include more than 40 inmates, which might include "several hundred if not thousands of individuals," satisfied numerosity requirement); *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 300 (N.D. Ill. 2008) (inmate section 1983 action involving four named plaintiffs, 12 identified class members and an *estimate* of more than 50 other class members); *Shariff v. Goord*, 235 F.R.D. 563, 570 (W.D.N.Y. 2006) ("plaintiff's allegations of approximately 100 potential class members, as well as the effect on future wheelchair-bound inmates, meets the numerosity requirement"); *Berry v. Baca*, 2005 WL 1030248, at *6 (C.D. Cal. May 02, 2005) (inmate unlawful detention 1983 action involving three named plaintiffs, "the thirty-two *Williams* opt-outs who have live claims, the thirty-two post-2002 over-detainees who have not settled estimated, and the unknown number of inmates who were over-detained for less than twenty-four hours" satisfied numerosity requirement); *Langley v. Coughlin*, 715 F. Supp. 522, 553 (S.D.N.Y. 1989) (subclass of 30 to

In the present case, Jefferson County testified that it "definitely" issues over one thousand body attachments each year. Allen Tr. at 27. Plaintiff himself has been detained twice on civil body attachments for child support arrearages. Sides Tr. at 30, 33. In light of Jefferson County's Rule 30(b)(6) testimony that "it's not unusual" for someone in custody on a civil body attachment to wait four to five weeks or more for a hearing, it is reasonable to estimate that Defendants have detained a large number of people for unconstitutionally long periods. Wright Tr. at 28; Sides Tr. at 42. If those same practices continue, it is also reasonable to expect the same thing will happen to many more in the future.

Indeed, Defendants are likely detaining people right now who have been in custody for unconstitutionally long periods (some not even yet scheduled to see a judge). Jefferson County's jail division commander, Lieutenant Wright, testified that there were 283 prisoners in the jail on the day of his deposition. Wright Tr. at 28. While only some subset of the jail population at any given time is likely detained on body attachments, the number of such people is not insignificant. Jefferson County issues body attachments at a rate of more than 2.74 per day (1,000 body attachments/year ÷ 365 days/year = 2.74 body attachments per day). If only a small fraction of those people are actually arrested on those body attachments, it is highly likely that the constantly fluctuating number of people sitting in jail for unconstitutionally long periods at any given time is alone sufficient to satisfy Rule 23(a)(1)'s numerosity requirement.

Given the "inherently fluid" nature of a "constantly revolving" jail populations, and the "necessarily unidentifiable" class of future persons who will be held on body attachments, "the re-

---

50 inmates and two others of approximately 100 inmates met the numerosity requirement); *Lawson v. Wainwright*, 108 F.R.D. 450, 453-55 (S.D. Fla. 1986) (estimated 59 inmates plus unknown number of additional inmates satisfied numerosity requirement); *Pabon v. McIntosh*, 546 F. Supp. 1328, 1333 (E.D. Pa. 1982) (class of 30 to 40 inmates in action under sections 1983 and 1985 met numerosity requirement);

10

quirement of Rule 23(a)(1) is clearly met, for 'joinder of unknown individuals is certainly impracticable.'" *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981).

### B. Commonality: Plaintiff's claim presents common questions of law and fact regarding Jefferson County's and Boyer's detention practices in civil matters.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality is a "low threshold" requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001). *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993) ("The threshold requirements of commonality and typicality are not high."). "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in a class action." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006) (citing *DeBoer v. Mellon Mort. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995)). *See also Paxton*, 688 F.2d at 561 ("The rule does not require that every question of law or fact be common to every member of the class.").

The commonality requirement "does not mean that the claims of the representatives must raise identical questions of law and fact with those raised by the claims of the rest of the class. Rule 23(a)([2]) clearly indicates that one common question of law or fact can be sufficient if the other pre-requisites are satisfied." *U.S. Fidelity & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978). *Accord Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994) ("Because the requirement may be satisfied by a single common issue, it is easily met, as at least one treatise has noted.") (citing H. NEWBERG & A. CONTE, 1 *Newberg on Class Actions* § 3.10, at 3-50 (3d ed. 1992)). "A broad based allegation of civil rights violations typically presents common questions of law and fact." *Pabon v. McIntosh*, 546 F.Supp. 1328, 1333 (E.D. Pa. 1982).

---

*United States ex rel. Walker v. Mancusi*, 338 F. Supp. 311, 315 (W.D.N.Y. 1971) (a proposed class of 38 inmates in section 1983 action was "sufficiently numerous").

This case presents a number of common questions of law and fact, including whether one or more of the following are policies or customs of Defendants Jefferson County and Boyer:

a) detaining persons pursuant to a body attachment for extended periods, including periods of over one month, without providing prompt access to the judicial system;

b) not providing prompt access to the judicial system the way persons arrested and charged with a criminal violation are provided prompt access to the judicial system;

c) scheduling first court appearances of persons detained pursuant to a body attachment without regard to how long such a person has been in custody, but instead based on the detainee's "place in line" and simultaneously providing for only a limited number of such persons each week to have a court appearance, with the consequence that detentions of four to five weeks is not unusual;

d) not providing to persons detained on a body attachment a process for initiating a challenge to the duration of their detention;

e) not providing to persons detained on a body attachment a process for initiating a challenge to the validity of their detention;

f) inadequately training or supervising employees to provide a process to persons detained on a body attachment a process for initiating a challenge to the duration or validity of their detention; and/or

g) inadequately training or supervising employees to inform persons detained on a body attachment of any existing processes for initiating a challenge to the duration or validity of their detention.

FAC ¶ 39. In addition, the case presents a simple, overriding common question of law: whether the detention practices of Jefferson County and Sheriff Boyer constitute deliberate indifference to the constitutional rights of Plaintiff and class members. Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### C. Typicality: Plaintiff's claim is premised on the same legal theory as the claims of the class.

The Eighth Circuit has held that, like commonality, "[t]he burden of showing [Rule 23(a)(3)'s] typicality is not an onerous one." *Paxton*, 688 F.2d at 562; *Newton*, 259 F.3d at 182-

12

83 (typicality is a "low threshold" requirement.); *Shipes*, 987 F.2d at 316 ("The threshold requirements of commonality and typicality are not high.").

The typicality requirement — that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" — is satisfied if the class representative's claims "'arise[] from the same event or course of conduct as the class claims, and give[] rise to the same legal or remedial theory." *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2009 WL 4782082, at *6 (E.D. Mo. Dec. 8, 2009) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)). *Accord Paxton*, 688 F.2d at 561-62. "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern*, 84 F.3d at 1540 (quoting *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

In the present case, Plaintiff's and class members' section 1983 claims are based on the very same conduct of Jefferson County and Sheriff Boyer. Their legal theories are identical, even though they need not be:  Jefferson County's prolonged detention of civil detainees violates their due process rights. Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### D. Adequacy of representation:  Plaintiff does not have interests antagonistic to those of the class, and his attorneys are qualified, experienced, and able to conduct the litigation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "This requirement encompasses two distinct factors: '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *Chorosevic v.*

*MetLife Choices*, 2007 WL 2159475, at *7 (E.D. Mo. July 26, 2007) (quoting *Lord*, 585 F.2d at 873); *Paxton*, 688 F.2d at 562-63 ("The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel.").

In the present case, Plaintiff's interests are not antagonistic to those of the class and he will continue to prosecute vigorously the interests of the class through qualified counsel. The American Civil Liberties Union of Eastern Missouri has extensive experience in class action and civil rights litigation, and section 1983 litigation in particular. Mr. King, who is of counsel to the class action law firm of Korein Tillery, LLC, has considerable experience in class action litigation in a variety of consumer, securities, ERISA and environmental cases. He, too, is qualified and capable of conducting the proposed litigation. Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

## II.  The requirements of Rule 23(b)(2) are satisfied.

"A class action may be maintained if Rule 23(a) is satisfied and if … (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …." Fed. R. Civ. P. 23(b)(2). "[A] common use of Rule 23(b)(2) is in prisoner actions brought to challenge various practices or rules in the prisons on the ground that they violate the constitution." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1776.1 (3d ed.).

> Courts have held that certain types of lawsuits, such as those in the criminal justice area, are inherently class actions because individual wrongs can be righted only by institutional reforms affecting an entire class of people. To attempt to afford relief to specific individuals while denying it to the class would only compound the injustice.

14

8 H. NEWBERG & A. CONTE, 1 *Newberg on Class Actions* § 25:25 (4th ed. 2002). "For example, Rule 23(b)(2) class actions have been utilized to challenge prison policies or procedures alleged to deny the class members their constitutional rights of access to the courts …." WRIGHT & MILLER, *supra*, § 1776.1.

Rule 23(b)(2) "is an especially appropriate vehicle for civil rights actions seeking such declaratory relief 'for prison and hospital reform.'" *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) (quoting 3B *Moore's Federal Practice*, *supra*, ¶ 23.40(1) (1980)). *Accord Lord*, 585 F.2d at 875 (noting "that subdivision (b)(2) is especially appropriate 'in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration'").

Plaintiff's allegations (as well as Jefferson County's own Rule 30(b)(6) testimony) regarding Jefferson County's and Boyer's civil detention practices easily satisfy the Rule 23(b)(2) test because they have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Accordingly, Rule 23(b)(2) is satisfied, and the Court should certify Count I as a class action.

> Respectfully submitted,
>
>   *s/ Robert L. King*
> Robert L. King, E.D. Mo. #3560
> 505 N. Seventh Street, Suite 3600
> St. Louis, Missouri 63101
> Phone: (314) 863-6902
>
> Anthony E. Rothert,. #44827MO
> Grant R. Doty, #60788MO
> American Civil Liberties Union
>  of Eastern Missouri
> 454 Whittier Street
> St. Louis, Missouri 63108
> Phone: (314) 652-3114

15

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2010, I electronically filed the foregoing instrument with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record for all parties.

                                              *s/ Robert L. King*